Good morning, Mr. Kemper. Good morning, Judge Smith, Judge Tsushima, Judge Kobayashi. We would have gladly come to Hawaii for this argument, but thank you for joining us. I didn't want to, so we came to Seattle. Well, I can't. There it is. Thank you. May it please the court, Keith Kemper, on behalf of Becky and Ben Flugstad, who did make the horrendous drive from the peninsula to join us here today, and actually made it on time. Counsel, good morning. Your Honors, this is not a case where competing policies directed government behavior. Rather, this is a case where government behavior, after the fact, went searching for a policy to justify it. I dare say that if this accident that resulted in the injury here had happened on private property, that we would not be here. We would be on our way to trial. This claim encompasses a very narrow set of decisions, a very short stretch of trail, and the issue is whether or not the edge of that trail was negligently constructed or maintained. Counsel, at least from my part, isn't your stronger case on the maintenance issue, the construction you get into the, shall I say, more nebulous territory, but with maintenance, isn't your case law back up fairly clear? Well, to be candid, I can't tell you as I stand here today whether, and here's what's great about the record in this case, it has a number of photographic representations, and so we know what the trail looked like at the point where Ms. Flugstad fell and was severely injured. What I cannot tell you, as I stand here today, is whether it was constructed poorly in the first place or whether it had fallen into disrepair because of poor maintenance. So it may be correct. Well, I think what Judge Smith, if I may, is intimating is that you have the discretionary function policy, right? And so on the construction, the sovereign is given a lot of leeway with regard to making decisions about the construction and so forth. Where on the negligent maintenance, that may be a different issue. And in looking through what you submitted with regard to the deposition as to people's eyewitness accounts as to how the accident occurred, I think it's a question of fact or appears to be where she was, why it happened, and so forth. So at this stage, on the negligence, if you could address your argument as to why the court should. I can. And of course you're exactly right. We're talking about 28 U.S.C. 2680A, whether or not the exception applies for some discretionary function of government. But the cases that we've cited, I can't concede the construction point for this reason. The cases that we have cited say, hey, the government has a lot of discretion in how it puts together a plan and how it decides to build something. But if in the construction, the construction doesn't conform to those plans, or there's just bad decisions made based upon engineering or professional judgment, which we submit is the case here, then that improper construction still can be a basis for a claim against the government. That decision is removed from the discretionary function exemption. At this stage, we don't have to prove either one of those. So if it got, if the trail, so let me back up a little bit. I think we do have sufficient facts to at least support on a Rule 12 motion, where the court is asked to assume that the facts as we've alleged them are true, or on a Rule 56 standard that we're entitled to every benefit of the doubt or reasonable inferences on those facts, that Ms. Flugstead was on the trail. There's a number of witnesses who talked about where she fell and actually drew circles on the pictures of where that happened. And I submit to the court that at least at this stage, for Rule 12 or Rule 56 purposes, that the evidence, and I think frankly the trial court missed this, that the evidence has to be at this starting point that Ms. Flugstead was on the trail and fell from the soft shoulder or the eroding edge of that trail. Not the vegetation. And that fall harmed her. Now again, let's certainly, we would all have to agree with your 12B6 point, but if you look at the complaint on its face and you talk about the design and direction and steepness and so on of the trail, that's all discretionary. And as a matter of law, wasn't the district judge within his rights to say, you know what, that's discretionary, even taking this as pledge that you can't have a cause of action? That doesn't deal with the maintenance issue. That's a separate point. But on the other point, why would the district judge be wrong in what was done here on that point? Well, I'm not sure I completely understand your question. When you say on that point... Meaning on the discretionary aspects of how the trail was designed, how steep it was, where it went, how wide it was, all that sort of thing. There's another significant question here. It's both a factual and a somewhat legal question at the same time. And that is, were there any standards to which this trail was to be built? That goes to, I suppose, the design or the plan in the first instance. I can't say we conceded that design is always a governmental discretionary act or function based on policy, because there are some places where you could still really poorly design something and it would probably be negligent. But we really haven't argued that in our briefing, Your Honor. So we don't take issue with where Judge Bryan came out necessarily on that the design function is a discretionary function so much as when it turns to then, here was the plan, how did you build it according to that plan? Did you have different options in how to build it according to that plan? And we submit they did. And then, did you keep the trail in that condition after you built it to those standards? Now the trail expert that we hired, and again you don't have to accept his opinions at this point, but his opinions and the facts that he adds should at least be considered for purposes of, again, Rule 12, Rule 56, as to whether or not they create an issue of fact here. His opinion was very clear that this eroding edge of the trail was dangerous. That it was a hazard. That it was not to standard. That there was a problem with the trail occurring here. He alleges it was poorly built, but he also alleges that that caused erosion. Erosion that could have been corrected by maintenance, which did not happen here. So going first to the construction. Now, you're challenging in terms of the design and construction. We have to look at first whether that conduct is discretionary or not. Do you concede it was discretionary? As to whether or not to take on this project and to resurface this trail, and the design of it, and what should be incorporated into that design, yes. And balancing preservation and public use and so forth. Indeed. That's discretionary. It is. Okay, then we go to the second step then, right? And so if it's discretionary, we have to consider whether the particular exercise of discretion was of the kind that the discretionary function exception was designed to shield. Right. What's your position on that? Well, I think our claim should survive on either question one or question two of the Berkovitz-Galbert test, Your Honor. And, you know, not all of the cases that cite Berkovitz and Galbert are really all that clear. When they come to the point where they say that, you know, this action was not of the type that was directed by a discretionary policy. And we argue strongly that that's part of the problems of this case. And I'm saying you could look at this either under step one or step two. The action here and a lot of the discretion that's argued about is the method that was ultimately chosen to construct this trail. Was it chosen based upon some discretionary function that was driven by some policy? And a lot of the discussion, the argument, and the briefs turns around the use of some sort of support for this material in the form of a footboard or other soil maintenance rather than vegetation, which was selected as the support for this trail. But that's because don't they have this mandate of balancing public use and conservation? They do. In fact, nearly all these cases that arise on federal lands out of the Park Service, those appear to be the competing concerns. How do we give visitors access to the lovely national parks and at the same time preserve what's there? Right. So that's within the discretionary function then of this particular... If that policy drove the decision making. That's exactly right. Here's the problem here. We do have lots of pictures of this site. And if your honors have seen them, there are footboards and support for this trail along the entire length of this trail except for the place where Ms. Flugstad fell. How can the United States, with a straight face, argue that the decision not to put a footboard in this spot was somehow driven, whether under prong one or prong two, by the need to preserve the natural look of the refuge when at every other point they found it necessary to support that trail with a footboard and they didn't find that that balance was somehow interrupted or harmed by it? Well, I mean, but isn't that the whole point behind the discretionary function exception is that if they have the discretion to do it and that's within their mandate and they make a crummy decision based on maybe overvaluing one competing concern than the other, they still get a pass under the exception because it's part of their discretionary function. I respectfully disagree, Your Honor. Where they cannot demonstrate that it actually was the discretionary function that led them to choose not to put the footboard there. Again, when you look at this case in hindsight, it's just hard to argue that the decision not to put a footboard there was based upon some competing concern. They claim it was now. Let's take a hypothetical. Let's just say that at that particular spot there was an incredible vista and they thought that having a footboard out there would somehow detract from that. Would that be enough to get it out from under the problem that you're postulating? If a footboard somehow interrupted with an incredible vista, absolutely, Your Honor. In their view. Well, I would hope that you three judges as you look at this look at that and say, all right, I'm not buying that a footboard played any role in that. From your perspective, Berkowitz and the other cases allow us to, in effect, second guess the discretionary function, basically. No, I would be flying in the face of all of these courts' decisions if I were to agree with that statement, Your Honor. The problem with your position is that you're making the case of what the government should have done, right, instead of what they did not do. But you see the statute, so you're saying they made the wrong choice. But if discretion is involved, remember the discretionary function except in the statute, except a decision, and these are specific words of the statute, even if that discretion is abused. In other words, even if they made the wrong decision, it doesn't matter, right? That's right, Your Honor. Now what you're saying, they made the wrong decision? No, I'm not. I'm saying they could have made other decisions that would have supported this, but my argument's closer to the ARA Leisure case, the Denali Park case, where having made a decision, so I think that's probably the most analogous here, but having made the decision to not put guardrails along that particular road, what happened after that was that the Park Service failed to maintain that road. And when the tour bus rolled off the side of that road, this court said, all right, you had full discretion to... But that's different. Maintenance is another matter. Well, we're claiming maintenance here, Your Honor. I understand, but what... But you've been arguing design. Now you switch to as... Well, I think I've been arguing construction, but I agree maintenance is an issue as well. In fact, I think ARA is most analogous because once... On the maintenance point. Indeed. Well, again, and Judge Tashima, let me come back to a case that you sat on recently in 2014, and it came out about the time that our briefing was done here, and I concede I didn't get to it until the last day preparing, and it was the Young case that came out of Rainier National Park, where Mrs. Young fell into a hole created by the electric transformer for the Jackson Visitor Center. And, Your Honor, what I understood your panel to have done in that case was to look at the stated policy reasons for why the decisions were made or not made in that case and try and decide whether it made any sense at all that the government's argument that, hey, we use this type of discretion was a reason for not putting warning signs around that particular transformer. So the court actually got into the analysis of, does the stated policy actually make sense for the action that was taken or not taken there? And that was a warning case, but... But your case, unlike Young, is not a failure to warn case. You're not making such a claim, are you? I'm not, Your Honor. What I'm saying is the type of analysis that the court entered into there, where it actually questioned, did this decision... I mean, because every time the government throws out the same policy balancing considerations, they say, hey, we were just balancing these policies. Well, what your panel did was say, well, come on. Did those policies dictate how you made the decision whether or not to warn there? I asked this court to consider, did the policies, the ones articulated here, did they have any control on how they ultimately constructed this and whether or not they could have maintained it? Any other questions by my colleagues? No, thank you. Thank you very much. Good morning, Your Honors. May it please the Court, I'm Teal Miller on behalf of the United States. I'm going to begin by talking about why this case is not a maintenance case. First of all, there are two reasons. The first one is I believe there isn't actually a factual dispute about where the plaintiff was when she fell, and the record is clear that she was on the shoulder of the hard surface of the path rather than on the path itself. At page 48 of the excerpts of record, there's her testimony that the last step she took before she fell was into, quote, the dirt between the hard trail and the weeds. What about Jeffrey Pearson's deposition testimony? He was standing on the soft edge of the trail. At page 178 of the record, there's a photographic image in which the page before, which is a statement from Jeffrey Pearson, makes clear that he is the person who has made a circle as to where her last step was. At 178 of the record, you can see that that circle is on the dirt shoulder, and his deposition testimony at page 286 is that she was on the dirt surface right next to the weeds. So his testimony does not give rise to a dispute of fact either. In their reply brief, they suggested that Amanda White's testimony gave rise to a dispute of fact on this question. That's also incorrect. Ms. White testified that, this is at 67 of the record, Becky stepped off the trail when she made that step backward and then forward. She was asked that question. Becky stepped off the trail when she made that step backward and then forward. She responded, correct. And then later, at 290, she said she was on the shoulder. Now, there is some ambiguity in her testimony. She said she took a step back and then a step forward. Let me just ask you this, counsel. In this case, are we at the pleading stage or are we at an evidentiary stage? Because the discretionary function section is jurisdictional, the court considered evidence submitted by the parties and the rule that applies to the standard is the summary judgment standard. So you look and see if there's a material dispute of fact. But that would not apply with respect to the maintenance issue, would it? Yes, it would because that is an argument that the discretionary function exception doesn't apply. I see. So all of it is the summary judgment standard and there is no dispute of fact here on that question for the reasons I gave. I can give other citations to the record to other testimony, all of which was consistent. She was on the shoulder. Now, the reason that's significant is because if she was on the shoulder, whether the edge of the hard surface of the trail was deteriorating or not is irrelevant because it didn't affect her fall. Now, the second reason this isn't a maintenance case or this can't survive as a maintenance case, even if you think there is some factual ambiguity, is the ARA Leisure case and the National Fire Insurance case. ARA Leisure, as counsel represented, is a case about a bus that went off the side of the road at Denali National Park. There were two claims by the plaintiff. The first was a challenge to a design decision that the park service should have put a guardrail there and failed to do so. That's a design decision and that was protected. The court's questions and the call we hear suggest that that applies to the design of the trail here, and I think that's correct. Terbish confirms that design decisions, particularly design decisions in parks or wildlife refuges or forest service land, are protected. The second decision in ARA Leisure that was challenged was a maintenance decision, but there's a really significant factual difference from here. In that case, the road was designed to be 28 feet wide, and at the time of the accident, it was 14.6 feet wide, but there was a park service manual that said that the roads must conform to original grades and alignments and be firm and of uniform cross-section. This court said that that maintenance decision wasn't protected because they didn't comply with the mandatory policy to maintain the road. National Fire Insurance actually makes this clear about ARA Leisure. I'm going to read a paragraph from National Fire Insurance, if I may. There is an element which appears to make this case more like the road in ARA Leisure than it really is. Facts of the case there are there was a retaining wall that was supposed to be 14 feet high, and it had subsided to 12 feet, and the plaintiff said this is a failure to maintain claim just like ARA Leisure. The court said no, it's different. It was plain in ARA Leisure that the road was supposed to be 28 feet wide and was only 14 feet wide and was supposed to have firm shoulders but instead had soft shoulders. Likewise, in the case at Barr, the breakwater was supposed to be 14 feet high and was only 12 feet high. That increased the force of the waves which destroyed the plaintiff's restaurant. But the legal difference is more significant than the factual similarity. In ARA Leisure, the regulation required the park service employees to keep the road shoulders firm and the road to 28 feet. In the case at Barr, the breakwater height was specified in its design, but there was no regulation or policy requiring the court to monitor the breakwater height and assure that it continued to conform to the design specifications. So even if you believe that there's some conflict in the record about where she was and she was on the edge of the trail, there would also have to be something that dictated that even though a year had passed since this trail had built, the National Wildlife Refuge had to go out there and make sure it still conformed to the width. And the design didn't specify how wide the hard surface of the trail had to be. So you're saying there's only going to be a maintenance claim, a negligence claim, if there's a policy to maintain it at a certain specification? I think ARA Leisure and National Fire Insurance stand for that proposition. Now there are some cases, like WisNant, where there was a routine maintenance decision that simply didn't have any policy implications, and that's a separate case. But here there are policy implications as to the appearance of a trail in a National Wildlife Refuge when the agency's function includes preserving the natural habitat. And I think the hypothetical that Judge Smith gave of what if a vista opens up here, actually applies in this case. If you look at the images of the record, where the footboards start, where there's a dirt shoulder and vegetation, that vegetation is sort of the hillside going down into the coastline and the beach, and this is the spot at which the trail opens up. Okay, so I can see that having to do with the construction, because you have to take all of those competing considerations into account. But once the National Park decides that they're going to open up a trail, if they don't come up with a certain sort of regulation or general policy about maintenance, are you saying then they never have a duty to maintain? I'm saying that there might be some... WisNant says there are some routine maintenance decisions where there is a duty to maintain. I'm saying this isn't one because it was a trail in a natural environment where the agency had a duty to preserve the natural habitat. And also, as I said before, I don't even think that it's a maintenance case in the first place. All right, so... And that's because there was no policy to maintain a certain width and so forth. And that there's no factual dispute as to where she was. She was on the shoulder, which means it's a backdoor way to get at the decision to have a shoulder. So say we do conclude that there's a factual dispute. Okay. All right, so then we get to the second part of it. And this is the part that the decision was that it falls within the discretionary function exception. Here, though, it's just your normal negligence claim. As counsel was saying, if it was on private property and you invited people in and you knew that people walked in this area. So that's where I'd like you to focus. Why should we not find that it should go forward, at least at this stage, on that claim? A couple of different reasons. One, because we're in a natural environment where the agency's mandate includes preserving the natural habitat. And so you would have to have some contravening mandatory directive that said, you know, Or if you do build it this way. If you leave it in the natural state and you have natural occurrences like rain, snow, storms, and it erodes over time, you're saying that there's no obligation on the part of the national park to maintain that trail? I'm saying without a mandatory duty in the agency regulations. And here there are no agency regulations with regard to the construction and maintenance of trails. That's correct. This is governed by state law, and what about in most states, I think Washington too, landowners' obligation, right? Well, there are. To keep the premises reasonably safe. There are tort duties, but of course in the discretionary function exception context, you have to find a mandatory directive under federal law that binds federal officials in their design. Do we have to have a mandatory directive for state law to find a landowner negligent? That's right. I'm not suggesting that a private landowner couldn't be negligent. And we judge the government by what a private landowner's duty is, right? That's right, on the merits of the negligence claim, but not on the discretionary function claim. I thought we were talking about maintenance. I think you're taking the position that the design and so on is discretionary, but maintenance is also discretionary. And we're asking questions on the basis that the maintenance aspect is not, at least as a per se category, part of the discretionary function. You dispute that, I gather. I agree that maintenance, that unlike design, maintenance isn't a per se category. But I think in the context of a natural environment, such as a national park or forest service land or a wildlife refuge. Let's get back to discretionary function again. Isn't Judge Tashima correct that where state law applies, if there's not an excluding federal law, then there is an ongoing obligation on any landowner to maintain the property in a certain way that's safe? Would you agree with that? Yes, but I do think the discretionary function exception accepts the government from that. Even on maintenance? Yes, in some circumstances, absolutely. What case would you cite for that? There are a number of cases. For example, there's a case, it's an unpublished decision called. We don't want unpublished decisions. Well, there are a number of cases on park service land where there are hazards, natural hazards, that the park service has made a judgment to leave. But that's not this. We're talking about a trail that's built. It's there, it's done, whether the design was a good design or a bad design is a different issue. We're not talking about that. We're talking about whether it was maintained. Whether you believe it or not, there is some testimony that suggests that the edge of the trail was crumbling or was falling into disrepair. If that's right, in a normal state action, the owner of the land might be liable. Why isn't that true in this case of the government? Well, as National Fire Insurance suggests, sometimes a decision not to maintain government lands to the standard at which they were originally built is protected when there's no mandatory duty requiring maintenance. But you're just talking in a circle. Excuse me, mandatory duty under the agency. Are you saying that in this particular case that there is some mandate, some regulation that says do not maintain this trail that you just built? No, I'm saying there's an absence of any positive requirement in federal law. Okay, so absent a mandate, doesn't state law apply as my colleague suggested? Absent a mandate, state law applies unless the decision is immunized by the discretionary function exception. Circling back around again, I'm saying that you get your discretionary function by virtue of the mandate. You've got the National Park, et cetera, et cetera, et cetera. But we're talking about here a situation where the discretionary function has been exercised. This has been designed, built, people are using it, it's there. The question is, is it being maintained? I don't see how that fits into the discretionary function, and I'm asking you to help me with that. How does this get into the discretionary area? Because in this context, it really is an attack on the design, and here's why. Maintenance is an attack on the design? In this context, it is, because their only evidence of a lack of maintenance is that the trail was eroding because it didn't have a footboard on the side. Okay, so let's just start with the eroding part. Okay, so it's a two-pronged test, right, whether there's a policy and you're saying there wasn't. Okay, so we get that. Then we get to the second part, is that is the kind of decision, i.e. not to put a footboard or not to somehow pack the trail or put a guardrail or something like that, is that really the type of exercise of discretion that's protected by the exception, right? Is it grounded in social, economic, and political policy? Seems like it's not. It seems like it's an everyday decision. Is this safe enough for people to walk on? It is, and that's because of the context in which the decision was made and the mandate of the agency, which includes preserving natural habitat. And it is always the case that a plaintiff can say one incremental additional safety requirement, like a footboard, like a guardrail, like a sign. I don't see how this mandate to preserve the natural habitat comes into play because the decision has already been made to disturb the natural habitat by building the trail in a certain way, and the problem is not the natural habitat. It's what's the man-made trail crumbling. Well, Your Honor, because the reason they think— How does that disturb the natural habitat? It's because plaintiff's theory as to why the edge was crumbling, and if you look at page 248 of the record, you'll see that their expert says the edge was crumbling because it wasn't supported correctly. That's a design decision. I see that my time is almost up, and I want to make— It's over. It's over. Oh, I apologize. If I could make— There's a trap door right there. The one final point I will make is that I think all of this question with regard to maintenance is irrelevant for the reason I said originally, which is there is no factual dispute in this case. Any other questions by my colleague? All right, thanks to both counsel for your argument. We appreciate it very much. The case just argued is submitted.
judges: Tashima, M. Smith, Kobayashi